Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:   516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON KEEL, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| CASPER SLEEP INC., PHILIP KRIM, ANTHONY FLORENCE, DIANE IRVINE, KAREN KATZ, JACK LAZAR, BENJAMIN LERER, NEIL PARIKH, and DANI REISS, | (2) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Brandon Keel ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Casper Sleep Inc. ("Casper" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Marlin Parent, Inc. ("Parent") through merger vehicle Marlin Merger Sub, Inc. ("Merger Sub" and collectively with Parent, "Durational") as a result of an unfair

process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a November 8, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Durational will acquire all the outstanding shares of Casper common stock for $6.90 per share in cash. As a result, Casper will become an indirect wholly-owned subsidiary of Durational.

3. Thereafter, on December 3, 2021, Casper filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, the Preliminary Proxy Statement reveals that no committee of disinterested Board members was created to run the sales process.

5. Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on December 3, 2021 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation

of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Casper, provided by Casper management to the Board and the Board's financial advisor Jefferies, LLC ("Jefferies") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Jefferies, if any, and provide to the Company and the Board.

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

8. Plaintiff is a citizen of North Carolina and, at all times relevant hereto, has been a Casper stockholder.

9. Defendant Casper is a public e-commerce company that sells sleep products online and in retail locations. Casper is incorporated under the laws of Delaware and has its principal place of business at Three World Trade Center, Floor 39, 175 Greenwich Street, New York, NY 10007. Shares of Casper common stock are traded on the New York Stock Exchange under the symbol "CSPR".

10. Defendant Philip Krim ("Krim") has been a director of the Company at all relevant times. In addition, Krim serves as the Company's Chairman of the Board and Chief Executive Officer ("CEO").

11. Defendant Anthony Florence ("Florence") has been a director of the Company at all relevant times.

12. Defendant Diane Irvine ("Irvine") has been a director of the Company at all relevant times.

13. Defendant Karen Katz ("Katz") has been a director of the Company at all relevant times. In addition, Katz serves as the Company's Lead Independent Director.

14. Defendant Jack Lazar ("Lazar") has been a director of the Company at all relevant times.

15. Defendant Benjamin Lerer ("Lerer") has been a director of the Company at all relevant times.

16. Defendant Neil Parikh ("Parikh") has been a director of the Company at all relevant times.

17. Defendant Dani Reiss ("Reiss") has been a director of the Company at all relevant times.

18. Defendants identified in ¶¶ 10 - 17 are collectively referred to as the "Individual Defendants."

19. Non-Party Durational is an investment firm that invests in high quality consumer companies. Durational was founded in 2017 and headquartered in New York, NY.

20. Non-Party Merger Sub is a wholly owned subsidiary of Durational created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Casper maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

24. Casper, together with its subsidiaries, designs and sells sleep products to consumers in the United States, Canada, and Europe. It offers a range of mattresses, pillows, sheets, duvets, bedroom furniture, sleep accessories, sleep technology, and other sleep-centric products and services. As of December 31, 2020, the Company distributed its products through its e-commerce platform, 67 Casper retail stores, and 20 retail partners. The Company was formerly known as Providence Mattress Company and changed its name to Casper Sleep Inc. in January 2014. Casper was incorporated in 2013 and is headquartered in New York, New York.

25. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success. For example, in the August 5, 2021 press release announcing its 2021 Q2 financial results, the Company highlighted 45% YoY Growth in North America, Including 79% YoY Growth in Retail Partnership Channel with North America revenue up 44.6% to an all-time quarterly record of $151.8 million and Gross Profit of $15.5 million or up 27.1% to $72.5 million.

26. Speaking on the positive results, CEO Defendant Krim said, "'We are pleased with our significant top-line growth, compared to both 2020 and 2019. Casper delivered all-time record quarterly revenue, reflecting continued demand for our innovative sleep products across our sales channels and the strength of the Casper brand. North America revenue growth of 45% year-over-year was driven by 79% revenue growth across our retail partnerships and 31% revenue growth across our DTC channel, representing 70% revenue growth compared to the second quarter of 2019. Our topline growth reflects the success of our new product offerings, the relevance of our omni-channel shopping experience and the staying and pricing power of our brand.'"

27. The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Casper. Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

28. Despite this upward trajectory, the Individual Defendants have caused Casper to enter into the Proposed Transaction without providing requisite information to Casper stockholders such as Plaintiff.

*The Flawed Sales Process*

29. As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

30. Notably, the Preliminary Proxy Statement fails to provide adequate information as to why the Board did not create a committee of independent and disinterested directors to run the sales process.

31. Moreover, the Preliminary Proxy Statement fails to disclose the total amount of consideration that Jefferies will receive in exchange for its financial advisory services related to the Proposed Transaction.

32. In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Durational, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

34. On November 15, 2021, Casper issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **NEW YORK – November 15, 2021** - Casper Sleep Inc. (NYSE: CSPR) ("Casper" or "the Company") announced today that it entered into a definitive agreement to be acquired by Durational Capital Management LP ("Durational"). Under the terms of the agreement, Casper common stockholders will receive cash consideration of $6.90 per share, representing a 94% premium to the closing share price on November 12, 2021, the last trading day prior to this announcement and a premium of approximately 80% to the 30-day volume weighted average price ending November 12, 2021
>
> Transaction Details
>
> Casper's Board of Directors has unanimously approved the transaction and recommends that Casper stockholders approve the transaction and adopt the merger agreement. The transaction is expected to close in the first quarter of 2022 and is subject to customary closing conditions, including Casper stockholder approval. Officers and directors of Casper and affiliated investors, who in the aggregate own or control approximately 28% of the Company's outstanding shares, have agreed to vote in favor of the transaction. Upon closing the transaction, Casper will operate as a privately-held company and will remain based in New York.
>
> The transaction is not subject to a financing condition and Durational has committed debt financing led by KKR Credit and Callodine Commercial Finance, LLC.
>
> Casper Sleep CEO Comment
>
> "We are delighted to announce this transaction with Durational Capital Management that creates immediate and substantial value for shareholders, and allows Casper to move forward on strong financial footing," said Casper's Co-Founder and Chief Executive Officer, Philip Krim. "In consultation with outside advisors, Casper's Board of Directors evaluated a range of strategic and financial alternatives over several months and determined, after careful consideration, that the transaction proposed by Durational is superior to all other alternatives available. With a commitment to maximizing value for all shareholders, the Board unanimously supports the offer from Durational and recommends that shareholders approve the transaction. This agreement offers a promising opportunity to realize

the highest value for our stockholders while providing Casper with much needed capital to execute on future initiatives to sustain and grow its business."

Durational Capital Management Comment

"We are excited to invest in Casper given its iconic brand, strong growth profile and track record of innovation," said Eric Sobotka, Managing Partner at Durational Capital Management.

Matthew Bradshaw, Managing Partner at Durational Capital Management, added: "With its world-class products and focus on health and wellness, we believe Casper is well-positioned for future success. We look forward to partnering with the Casper team to build on the strength of the brand and to create new opportunities for the company to thrive."

### *Potential Conflicts of Interest*

35. The breakdown of the benefits of the deal indicate that Casper insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Casper.

36. Notably, Company insiders, currently own large, illiquid portions of Company stock, company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Preliminary Proxy Statement provides the following information, it fails to disclose an accounting of how much merger consideration will be afforded to Company insiders as a consequence of the consummation of the Proposed Transaction and the cashing out of these amounts.

| Name of beneficial owner | Shares of Casper Common Stock beneficially owned | |
|---|---|---|
| | Number | Percentage |
| **5% Stockholders** | | |
| Entities affiliated with NEA[1] | 6,226,130 | 14.95% |
| Entities affiliated with IVP[2] | 2,415,973 | 5.80 % |
| **Executive Officers and Directors** | | |
| Philip Krim[3] | 2,665,027 | 6.33% |
| Emilie Arel[4] | 463,312 | 1.10% |
| Michael Monahan[5] | 76,794 | *% |
| Anthony Florence[6] | 6,239,834 | 14.99% |
| Diane Irvine[7] | 54,832 | *% |
| Karen Katz[8] | 58,582 | *% |
| Jack Lazar[9] | 82,247 | *% |
| Benjamin Lerer[10] | 1,309,269 | 3.14% |
| Neil Parikh[11] | 1,832,212 | 4.37% |
| Dani Reiss[12] | 175,369 | *% |
| **All executive officers and directors as a group (11 persons)[13]** | 13,141,446 | 30.58% |

37.  In addition, Company insiders, currently own company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, the Preliminary Proxy Statement fails to provide an accounting of the amount of these equity awards or how much consideration they will be exchanged for.

38.  In addition, certain employment agreements with certain Casper executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

***Golden Parachute Compensation***

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Other (4) | Total ($)(5) |
|---|---|---|---|---|---|
| Philip Krim | 1,500,000 | 3,676,568 | 52,071 | — | 5,228,639 |
| Emilie Arel | 1,875,000 | 3,411,787 | 22,873 | 600,000 | 5,909,660 |
| Michael Monahan | 825,000 | 1,358,755 | 33,796 | 500,000 | 2,717,551 |

39. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40. Thus, while the Proposed Transaction is not in the best interests of Casper, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

## *The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

41. On December 3, 2021, the Casper Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42. Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

a. The specific reasoning why no committee of independent and disinterested Board members was created to run the sales process;

b. The total amount of consideration that Jefferies will receive in exchange for its financial advisory services related to the Proposed Transaction;

c. Whether the confidentiality agreements entered into by the Company with Durational differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Durational, would fall away; and

e. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Casper's Financial Projections*

43. The Preliminary Proxy Statement fails to provide material information concerning financial projections for Casper provided by Casper management to the Board and Jefferies and relied upon by Jefferies in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

44. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Jefferies reviewed, "certain information furnished to Jefferies and approved for its use by the Company's management, including financial forecasts, estimates and analyses, relating to the business, operations and prospects of the Company (the "Casper Forecasts")."

45. Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Casper management provided to the Board and Jefferies. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

46. With regard to the *September Long-Range Plan* Projections prepared by Casper Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

- a. Adj. EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings (loss), interest (income) expense, income tax expense, depreciation and amortization, and the specific adjustments made to exclude the impact of stock-based compensation expense, restructuring costs, costs associated with legal settlements and transactions

costs incurred in connection with the Company's initial public offering, as of November 14, 2021;

b. EBITDA (net of SBC) including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings (loss), interest (income) expense, income tax expense, depreciation and amortization, and the specific adjustments made to exclude the impact of transaction costs incurred in connection with the Company's initial public offering, as of November 14, 2021;

c. NOPAT including all underlying necessary metrics, adjustments, and assumptions, including specifically: Depreciation and Amortization, and the specific implied taxes utilized determined using a blended federal and state tax rate applied to positive EBIT, as of November 14, 2021;

d. Unlevered CFO including all underlying necessary metrics, adjustments, and assumptions, including specifically: depreciation and amortization, and changes in net working capital as of November 14, 2021; and

e. Unlevered FCF including all underlying necessary metrics, adjustments, and assumptions, including specifically: depreciation and amortization expense, changes in net working capital, capex, and other specific adjustments.

47. With regard to the *Q4 Financial Forecast* Projections prepared by Casper Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a. Operating Expenses, including all underlying necessary metrics, adjustments, and assumptions, including specifically: depreciation and amortization, and stock-based compensation; and

b. EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: earnings (loss), interest (income) expense,

income tax expense and depreciation and amortization, and the specific adjustments made to exclude the impact of stock-based compensation expense, restructuring costs, costs associated with legal settlements and transactions costs incurred in connection with the Company's initial public offering, as of November 14, 2021.

48. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Jefferies' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Jefferies*

51. In the Preliminary Proxy Statement, Jefferies describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a. The terminal values for Casper calculated;

      b. The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 2% to 4%;

      c. The specific inputs and assumptions used to determine the utilized discount rate range of 16.25% to 17.75%;

      d. Casper's weighted average cost of capital utilized;

      e. Casper's net operating losses utilized;

      f. The specific inputs and assumptions used to determine the utilized NOL discount rate 19.0%;

      g. Casper's cost of equity utilized;

      h. Casper's projected net debt as of December 31, 2021; and

      i. The number of fully diluted Casper common stock shares outstanding.

53. With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a. The specific metrics for each selected public company analyzed; and

      b. The specific inputs and assumptions used to determine the selected reference range of enterprise value to estimated Adjusted EBITDA multiples of 7.0x to 8.75x.

54. With respect to the *Illustrative Premiums Paid Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a. The specific inputs and assumptions used to determine the selected reference ranges of:

           i. 10.6% - 45.5% for All Industries - 1 day prior;

        ii. 12.1% - 50.5% for All Industries - 30 days prior;

        iii. 12.5% - 42.9% for Consumer & Retail – 1 day prior; and

        iv. 12.8% - 55.2% for Consumer & Retail – 30 days prior.

55. Additionally the Preliminary Proxy Statement fails to disclose the total amount of consideration that Jefferies will receive in exchange for its financial advisory services related to the Proposed Transaction.

56. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

57. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Casper stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

58. Plaintiff repeats all previous allegations as if set forth in full herein.

59. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

60. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

61. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62. The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

64. The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

65. The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

66. Plaintiff repeats all previous allegations as if set forth in full herein.

67. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

68. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved,

ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

69. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Casper's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

70. The Individual Defendants acted as controlling persons of Casper within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Casper to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Casper and all of its employees. As alleged above, Casper is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 9, 2021                    **BRODSKY & SMITH**

                                           By: _____
                                           Evan J. Smith
                                           240 Mineola Boulevard
                                           Mineola, NY  11501
                                           Phone: (516) 741-4977
                                           Facsimile (561) 741-0626

                                           *Counsel for Plaintiff*